UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOVAN BARKSDALE,

                              Petitioner,              DECISION AND ORDER

-vs-

                                                        17-CV-6537 (CJS)

KAREN CRAWLEY, *Superintendent of
Orleans Correctional Facility*,

                              Respondent.
_____

      Petitioner Jovan Barksdale ("Barksdale") filed *pro se* the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction and sentence after a trial by jury in County Court in Erie County, New York for criminal possession of a weapon in the second degree. Pet., Aug. 7, 2017, ECF No. 1. He contends that he was denied his constitutional rights when the trial court failed to conduct a full Mapp hearing, denied his Batson challenge, admitted a recording of a phone call he made from jail, and gave him an unduly harsh sentence. Barksdale also maintains that he was deprived his due process rights because there was insufficient evidence to convict him, and that he received the ineffective assistance of trial counsel. Respondent Karen Crawley opposes the petition. Resp., Jan. 11, 2018, ECF No. 6. For the reasons discussed below, Barksdale's petition [ECF No. 1] is denied. The Clerk of Court is directed to close this case.

## BACKGROUND

Factual Background

      The following is a summary of the relevant facts that a jury could have reasonably found from the evidence presented at trial. At approximately 8 A.M. on April 3, 2012, Darryl Stuckey picked up his friend, Keith Nelson, and transported him to Stuckey's house at 204 Johnson Street, Buffalo, New York, so that Nelson could continue his work painting Stuckey's house. Nelson began that day by painting the side of the house, but by 10 A.M. had worked around to the trim on the front of the

1

house. Before Nelson began painting the front of the house, he and Stuckey carried some painting tarps from the garage and laid them on the front porch. Stuckey then left the front of the house, and Nelson climbed a ladder and began painting the trim above the first story.

At around that same time, Buffalo police received a 9-1-1 call reporting that two tall black males, dressed in dark clothing, had parked a white vehicle on Grey Street and were walking westbound armed with handguns in the direction of Johnson Street. Investigator William Donovan was in the neighborhood in an unmarked car when the call went out over the police radio, and proceeded to Johnson Street to look for the suspects. As Investigator Donovan was slowly driving up Johnson Street, he watched Barksdale emerge from a park across the street from Stuckey's house, walk up onto Stuckey's porch, lay flat on his stomach, stretch out his hands in front of him, and then sit up on the porch steps "like he belonged there."

While Donovan was observing Barksdale from his vehicle, Keith Nelson was on a ladder next to the porch, painting Stuckey's house. Nelson noticed Barksdale walk across the street and up the porch steps, but lost sight of him once he went onto the porch. However, Barksdale soon left the porch and asked Nelson if he needed help. Nelson had seen Barksdale in the neighborhood before, but had never met him and did not know his name.

In the meantime, Officers Sullivan and Hemphill – uniformed officers from the Buffalo Police Department in marked police vehicles – had joined Investigator Donovan at the scene and summoned Barksdale away from Stuckey's house. The police officers then checked Barksdale for weapons while Investigator Donovan walked across the street toward Stuckey's house. When Barksdale noticed that Investigator Donovan was moving toward Stuckey's house, he attempted to flee from Officers Sullivan and Hemphill, and a struggle ensued. The officers were eventually able to secure Barksdale in handcuffs, and Investigator Donovan proceeded to Stuckey's porch. There, Donovan moved the painting tarps that Nelson had earlier placed on the porch, and discovered a loaded silver handgun underneath. Neither Stuckey nor Nelson had placed the handgun on the porch

2

beneath the tarps, and the gun was not there when they had earlier put out the tarps. Thereafter, Barksdale was placed under arrest for, among other things, criminal possession of a weapon.

While in jail awaiting a bail hearing, Barksdale made a phone call that was recorded by the jail's monitoring system. On the recording, the person to whom Barksdale was speaking can be heard to ask: "you got caught with chrome?" To which Barksdale responded, "yeah." "Chrome" is street slang for a silver – or chrome-colored – handgun.

Procedural History

In January 2013, Barksdale was convicted after a jury trial on a one count indictment for criminal possession of a weapon in the second degree, as a second violent felony offender. Following his conviction and before sentencing, Barksdale filed two motions under New York Criminal Procedure Law ("N.Y.C.P.L.") § 330.30 to set aside the verdict against him. Among other things, he argued that the evidence before the grand jury was not legally sufficient to establish his commission of the offense, and that he received ineffective assistance of counsel for failure to challenge the sufficiency of the grand jury proceedings, and for failure to contest the violation of his speedy trial rights. After the jury trial, the trial court reviewed the grand jury minutes *in camera*, and found that the evidence presented to the grand jury was legally sufficient to sustain the charge against Barksdale, and declined to find that Barksdale's trial counsel was ineffective because a motion to enforce his speedy trial rights prior to the trial would have been without merit. Therefore, both of Barksdale's § 330.30 motions were denied.

On August 29, 2013, Barksdale was sentenced to a determinate prison term of ten years plus five years post-release supervision. He appealed to the state appellate division, raising six arguments. He argued that he was denied a fair trial and due process when the trial court failed to conduct a full fact-finding hearing ("Mapp Hearing") to determine if he possessed standing for a suppression hearing; that he was denied the effective assistance of trial counsel when his counsel failed to file a meritorious motion challenging the sufficiency of the indictment; that the trial court

improperly denied his *Batson* challenge; that the admission of his "jailhouse" telephone call was improper; that he was convicted upon insufficient evidence or, in the alternative, his conviction was against the weight of the evidence; and that his sentence was unduly harsh and excessive. The appellate division rejected all of Barksdale's arguments, and he was denied leave to appeal to the New York Court of Appeals. *People v. Barksdale*, 11 N.Y.S.3d 395 (N.Y. App. Div. 2015); *People v. Barksdale*, 38 N.E.3d 834 (N.Y. 2015).

While his appeal was pending, Barksdale also filed *pro se* a motion to vacate his sentence with the trial court pursuant to N.Y.C.P.L. § 440.10, arguing that his counsel was ineffective. The trial court denied his motion in all respects, without a hearing. The trial court's ruling was unanimously affirmed by the appellate division, and Barksdale was denied leave to appeal to the Court of Appeals. *People v. Barksdale*, 32 N.Y.S.3d 545 (N.Y. App. Div. 2016); *People v. Barksdale*, 63 N.E.3d 74 (N.Y. 2016).

On August 7, 2017, Barksdale filed *pro se* the instant habeas petition, maintaining that he was denied his constitutional rights to a fair trial and due process when the trial court failed to conduct a Mapp Hearing, denied his *Batson* challenge, impermissibly permitted admission of his jailhouse phone call, convicted him upon insufficient evidence, and gave him an unduly harsh sentence. Further, Barksdale maintains that his trial counsel provided constitutionally deficient representation. Respondent opposes the petition, and requests that Barksdale's petition be dismissed. Resp. Mem. in Suppt., Jan. 11, 2018, ECF No. 7.

LEGAL STANDARD

Barksdale brings his habeas corpus petition pursuant to 28 U.S.C. § 2254. The general legal principles applicable to such a claim are well-settled. Federal courts are obliged to give deference to state courts' decisions. *See Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (citing The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214). "First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the

4

state courts in the first instance." *Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014). "Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions." *Id.* (citing *Wainwright v. Sykes*, 433 U.S. 72, 82–84 (1977)). For claims adjudicated on the merits in state court, a federal court may issue a writ of habeas corpus only when the state-court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." *Chrysler*, 806 F.3d at 117 (quoting 28 U.S.C. § 2254(d)(1)).

A principle is "clearly established Federal law" for § 2254 purposes when it is embodied in a Supreme Court holding framed at the appropriate level of generality. *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (quoting, *inter alia*, *Thaler v. Haynes*, 559 U.S. 43, 47 (2010)). A state court decision is "contrary to" such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law, or has "decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Washington*, 876 F.3d at 403 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). An "unreasonable application" of such clearly established law occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case such that "the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Washington*, 876 F.3d at 403 (citation omitted).

DISCUSSION

As indicated above, Barksdale's habeas application raises six principal arguments. Because Barksdale is proceeding *pro se*, the Court has construed his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Nevertheless, after a review of the answer, and the transcripts and records of the state court proceedings, in accordance with Rule 8 of the Rules Governing Section 2254 Cases, the Court finds

5

that an evidentiary hearing is not necessary to address Barksdale's arguments. *See also* 28 U.S.C. § 2254(e)(2).

Failure to Hold a Mapp Hearing

Barksdale argues that he was denied due process of law and a fair trial when the trial court declined to hold a "Mapp Hearing" to discern whether Barksdale had standing to seek suppression of the handgun that was discovered on Stuckey's porch by Investigator Donovan. In particular, he argues that he was entitled to a hearing to determine whether his alleged abandonment of the firearm on Stuckey's porch was the result of illegal police activity.

Although Barksdale couches this argument in due process language, it is actually a Fourth Amendment issue. In the Second Circuit, the test for whether a district court has authority to review a habeas petitioner's Fourth Amendment claim is well-settled:

> In [*Stone v. Powell*, 428 U.S. 465 (1976)], the Supreme Court held that "where the State has provided an *opportunity* for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 481–82 (emphasis added).
>
> In the wake of *Powell*, this Circuit has developed a litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation of his fourth amendment claims. *See Gates v. Henderson*, 568 F.2d 830 (2d Cir. 1977) (en banc), *cert. denied*, 434 U.S. 1038 (1978). *Gates* noted that "all that the [Supreme] Court required was that the state [ ] provide[ ] the *opportunity* to the state prisoner for a full and fair litigation of the Fourth Amendment claim...." *Id*. at 839 (emphasis in original). We concluded that review of fourth amendment claims in habeas petitions would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. *Id*. at 840; *see McPhail v. Warden, Attica Correctional Facility*, 707 F.2d 67, 70 (2d Cir. 1983).

*Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). *See also Withrow v. Williams*, 507 U.S. 680, 682 (1993).

In the present case, Barksdale cannot meet the requirements for either exception. "The Second Circuit has long held that Article 710 of the New York Criminal Procedure Law – which

6

provides a statutory mechanism to suppress unlawfully obtained evidence – constitutes a facially adequate mechanism for adjudicating Fourth Amendment defenses in criminal proceedings." *Reddick v. Yelich*, No. 09 CIV. 9500 RJH MHD, 2011 WL 7004396, at *4 (S.D.N.Y. Aug. 3, 2011), *report and recommendation adopted*, No. 09 CIV. 09500 RJH, 2012 WL 94562 (S.D.N.Y. Jan. 12, 2012) (citing, *inter alia*, *Capellan*, 975 F.2d at 70 n. 1). Here, the trial court entertained a pre-trial motion from Barksdale's trial counsel under CPL § 710.20, and on August 15, 2012, heard oral argument from both parties – including the prosecution's representation that Investigator Donovan would testify he had no contact with Barksdale prior to his visiting the porch at Stuckey's house – before finding against Barksdale. Barksdale fully briefed the issue on direct appeal, and the appellate division affirmed the trial court's ruling. *Barksdale*, 11 N.Y.S.3d at 396. The issue was also briefed in Barksdale's application for leave to appeal to the New York Court of Appeals, but that application, too, was denied. *People v. Barksdale*, 38 N.E.3d 834 (2015). Hence, the state provided – and Barksdale utilized – adequate corrective procedures.

Further, Barksdale cannot show there was an "unconscionable breakdown" in the underlying process. The "unconscionable breakdown" exception is extremely narrow and reserved for situations in which the state's corrective mechanism was "claimed to be meaningless [because] the totality of state procedures . . . did not provide rational conditions for inquiry into federal-law . . . questions." *Reddick*, 2011 WL 7004396 at *4 (citing *Capellan*, 975 F.2d at 70). Barksdale argued his claim to the trial court, the appellate division and the Court of Appeals, but the trial court and appellate division found no merit in Barksdale's arguments. In the present petition, Barksdale does no more than disagree with these courts' decisions, and suggest that his arguments before the trial court were sufficient to grant a hearing. *See, e.g., Kirk v. Burge*, 646 F. Supp.2d 534, 545 (S.D.N.Y. 2009). "Mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." *Capellan*, 975 F.2d at 72. Thus, Barksdale's disagreement is inadequate to show "unconscionable breakdown." *Kirk,* 646 F. Supp.2d

at 545 (citing *Allah v. LeFevre*, 623 F.Supp. 987, 991–92 (S.D.N.Y.1985); *Grajales v. Brown*, 2008 WL 2313137, at *6 (E.D.N.Y. June 02, 2008)).

In sum, review of Barkdale's Fourth Amendment claim is barred by the rule set forth by the Supreme Court in *Stone v. Powell*, *supra*.

<u>Ineffective Assistance Claims</u>

Barksdale claims that his trial counsel's performance was constitutionally deficient because counsel failed to file a meritorious speedy trial motion despite the passage of 188 days following his indictment which Barksdale maintains are chargeable to the prosecution. Pet. at 16. He also claims that his trial counsel's performance was deficient for failing to move the court to dismiss the indictment for legal insufficiency.

The Sixth Amendment guarantees a criminal defendant the right to "reasonably effective assistance" of counsel. To establish ineffective assistance of counsel, a defendant must satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" under the "prevailing professional norms." *Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (citing *Strickland*, 466 U.S. at 688). Second, the defendant must demonstrate he was prejudiced by the ineffective conduct. *Strickland* at 687–88. A defendant's failure to satisfy one prong of this two-pronged test relieves the court of any requirement to consider the other prong. *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991).

In the present case, the Court need not consider whether Barksdale's attorneys' performance fell below an objective standard of reasonableness because Barksdale fails to show prejudice on either account. To demonstrate prejudice, the habeas petitioner must show there is a "reasonable probability" that but for counsel's error, the outcome of the proceeding would have been different. *Strickland* at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome . . . instead, [t]he likelihood of a different result must be substantial, not just

8

conceivable." *Garner v. Lee*, 908 F.3d 845, 862 (2d Cir. 2018) (quoting *Harrington v. Richter,* 562 U.S. 86, 111–12 (2011)) (internal quotation marks omitted).

Barksdale's claim that he was prejudiced by his attorneys' failure to file a speedy trial claim is without merit. Although his first and second attorney's did not raise a speedy trial claim, Barksdale's third attorney in this case, Attorney Molly Jo Musarra, Esq., filed a motion to vacate the verdict pursuant to CPL § 330.30 which argued that Barksdale's conviction should be vacated on speedy trial grounds. Hr'g Tr. (330.30), Aug. 29, 2013. The trial court issued an oral ruling on the motion, and found Barksdale's motion to be "meritless" because the total time chargeable to the prosecution prior to trial was 144 days, well short of the 180 days permitted by statute. Hr'g Tr. (330.30) at 19:18–11:7. Barksdale's appellate counsel briefed the speedy trial issue in his direct appeal, and the appellate division concluded that "such motion would have been unsuccessful, and defense counsel is not ineffective for failing to make a motion that has little or no chance of success . . . ." *Barksdale*, 11 N.Y.S.3d at 397. Barksdale cannot demonstrate that he was prejudiced by trial counsel's failure to move the trial court to dismiss the case for a violation of Barksdale's speedy trial rights where both the trial court and the appellate division subsequently reviewed the issue and found that Barksdale's speedy trial rights were not violated.

Barksdale also fails to show that he was prejudiced by his attorney's failure to make a motion to dismiss the indictment. To begin with, it appears that Barksdale's first attorney did move the court, on June 29, 2012, for an inspection of the grand jury minutes, and dismissal of the indictment. However, as the trial court later admitted, neither Barksdale's first or second trial attorney realized that the trial court failed to rule on the motion prior to trial. It was only when Barksdale himself, after the trial, filed a *pro se* motion that the trial court recognized it had never ruled on the June 29, 2012 motion. By that time, the trial court found the error unpreserved because no objection was made before the commencement of the trial. Hr'g Tr. (330.30) at 8:3–8. Nevertheless, counsel's failure to preserve the error was harmless, because the trial court did ultimately review the grand jury minutes

9

on May 23, 2013 and found that "legally sufficient evidence was presented before the Grand Jury to sustain the charge[s] contained in the indictment . . . ."

Consequently, Barksdale's claims of ineffective assistance of counsel must be denied.

The Batson Challenge

Next, Barksdale argues that he was denied the equal protection of the law and a fair trial "by the [prosecution]'s discriminatory exercise of a peremptory challenge and the trial court's improper denial of the petitioner's Batson moti[o]n." Reply, 2, Apr. 11, 2018, ECF No. 12. In *Batson v. Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court outlined a three-step burden-shifting framework for determining whether the prosecution violated a defendant's constitutional rights by exercising its peremptory challenges in jury selection on the basis of race. First, the defendant must establish a prima facie case of racial bias. *Id*. at 96–97. If the defendant establishes a prima facie case, the prosecution must then offer a race-neutral explanation for its challenge to the jurors in question. *Id*. at 97. Even if the reasons the prosecution provides are neither "persuasive, [n]or even plausible," as long as those reasons are facially valid, the burden moves back to the defendant to prove that the prosecution's stated reasons are a pretext for purposeful discrimination. *Id*. See also *Majid v. Portuondo*, 428 F.3d 112, 126 (2d Cir. 2005).

"[T]he third step of the Batson inquiry requires a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." *Jordan v. Lefevre*, 206 F.3d 196, 200 (2d Cir. 2000) (internal quotation and citation omitted). Trial courts applying the third Batson prong need not recite a particular formula of words, or mantra. *Galarza v. Keane*, 252 F.3d 630, 640 n. 10 (2d Cir. 2001). However, the Second Circuit has repeatedly said that a trial court must somehow "make clear whether [it] credits the non-moving party's race-neutral explanation for striking the relevant panelist." *Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006).

During jury selection, the prosecution challenged Juror Number 9, and described to the trial court the circumstances she believed justified the challenge:

> I was uncomfortable with the manner in which [Juror Number 9] was rolling his eyes during some questioning by the court this morning. And I generally make it a practice to run some of the names through . . . our Erie County District Attorney's Office criminal system. And his name came up in our system as having been arrested and charged with four different crimes.
>
> . . . . He does have criminal convictions . . . . [H]e has been charged with a felony and resulted in a misdemeanor offense.
>
> As you're aware during your voir dire this morning you asked the panel if they've ever been charged with a crime. And those that had been charged with crimes or knew people that had been charged with crimes answered, and [Juror Number 9] did not answer. That was one of the times when I saw him rolling his eyes.
>
> So during my voir dire I asked the question again . . . whether or not any one had been charged with a crime, arrested or convicted of a crime – and again he remained mute.
>
> * * *
>
> . . . . I think his blatant omission is a reason to challenge him for cause.

Trial Tr. vol. I, Jan. 14, 2013, 116:3–117:13.

Barksdale's counsel opposed the prosecutor's challenge for cause, and the trial court recalled Juror Number 9 to question him outside of the presence of the other potential jurors. Upon questioning, Juror Number 9 admitted that he had been convicted of the misdemeanor of petit larceny for taking more unemployment funds than he was due. Trial Tr. vol. I at 121:7–19. He explained that he didn't speak up in answer to the court's or the prosecutor's questions because he had not been arrested, handcuffed, and hauled into jail for the offense, as in many other criminal matters. Trial Tr. vol. I at 125:24–126:3. He said he had simply reached a settlement with the individual who notified him of his offense. Trial Tr. vol I at 126:5–8. After Juror Number 9 left the courtroom, the court stated that "I can certainly understand why [the prosecution] would be concerned under the circumstances, but I guess it doesn't mean that he's disqualified for cause." Trial Tr. vol. I at 130:9–11.

Thereafter, the prosecution exercised its peremptory challenge on, among others, Juror Number 9. Trial Tr. vol. I at 134:2–4. Barksdale's counsel objected: "I would point out [Juror Number

9] is the only African-American on the panel . . . . I believe it's a Batson issue." Trial Tr. vol. I at 135:7–12. In response, the prosecution noted that she also exercised a peremptory challenge for another juror who was a white male, and that she ran more jurors than Juror Number 9 through the Erie County District Attorney's Office criminal system. Trial Tr. 136:3–20. The trial court ruled that there was no pattern of discrimination, and that Juror Number 9's failure to disclose during voir dire that he had been charged with a crime "would qualify as a reason to challenge him peremptorily." Trial Tr. 137:2–17. The appellate division affirmed the trial court's ruling on this issue "based on its determination that the prosecutor's explanation for the peremptory challenge at issue was not pretextual." *Barksdale*, 11 N.Y.S.3d at 396.

The trial court in this case made it clear that it credited the prosecution's race-neutral explanation for striking Juror Number 9. As indicated in the excerpt from the transcript, the prosecution's challenge for cause was based on her concern that Juror Number 9 did not disclose his prior conviction. Although she did not reiterate the full argument after her peremptory challenge, the prosecutor did note that she also exercised a peremptory challenge on a white male, and that she already "went through it extensively [about Juror Number 9], why I have concerns about his ability to serve and why I preempted him." Trial Tr. 136:9–11. Under such circumstances, the trial court's determination that the prosecution's peremptory challenge was based on a failure to disclose a crime rather than on race was reasonable. Accordingly, the Court finds the trial court's denial of Barksdale's *Batson* challenge was not improper.

Jailhouse Recordings

At trial the prosecution introduced a recording of a call that Barksdale made to an acquaintance during which his acquaintance asked, "you got caught with chrome?," and to which Barksdale appeared to respond, "yeah." Trial Tr. vol. II at 162:1–4. While on the stand, Investigator Donovan was asked – as an expert in "street jargon" – what he took that exchange to mean. Investigator Donovan indicated that he interpreted it to be the acquaintance asking Barksdale

whether he got caught with a gun. Trial Tr. vol. II at 162:3. In his petition, Barksdale argues that the admission of the recording of the call along with Investigator Donovan's testimony constituted bolstering of Investigator Donovan's testimony. Pet. at 16.

It is a well-established rule that alleged violations of state law do not give rise to federal habeas claims. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions"). Therefore, "[w]hen a habeas corpus petitioner alleges error as to the trial court's evidentiary rulings, the task of the federal court is to determine whether the petitioner was deprived of fundamental fairness at trial." *Kirkby v. Filion*, 644 F. Supp.2d 299, 308 (W.D.N.Y. 2009) (citing *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988)). That is, the court must determine whether there was a "constitutional error [that] was harmless beyond a reasonable doubt." *Rosario*, 839 F.2d at 924 (citing *Chapman v. California*, 386 U.S. 18, 22-24 (1967)). The principal factors to be considered are the importance of the witness's alleged wrongly admitted testimony, and the overall strength of the prosecution's case. *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000).

Here, the appellate division found that the trial court's admission of Investigator Donovan's testimony was not error because the record established that he was qualified to interpret the language based on his experience. *Barksdale*, 11 N.Y.S.3d at 397. Further, the appellate division stated that to the extent Investigator Donovan "may have gone beyond merely interpreting certain words," the trial court eliminated any potential prejudice by issuing an agreed upon cautionary instruction to the jury. *Id.* Lastly, in light of the strength of the prosecution's case – the observations of Barksdale's conduct by Investigator Donovan, the testimony of Keith Nelson, Barksdale's attempts to flee, the discovery of the gun on the porch – the Court finds that even if the admission of the recording and Investigator Donovan's interpretation could be considered erroneous, it could have had no effect on the outcome of the proceeding. *See, e.g., Rupert v. Noeth*, No. 17-CV-6373L, 2020 WL 7414097, at *2 (W.D.N.Y. Dec. 18, 2020).

Barksdale's argument with respect to the admission of the recording and Investigator Donovan's testimony is without merit.

Sufficiency of the Evidence

Barksdale maintains that he was deprived of the due process of law because he was convicted upon insufficient evidence, and that the conviction was against the weight of the evidence. Pet. at 17. He asserts that the prosecution failed to establish that he constructively possessed the handgun found on the front porch of Stuckey's house, which was being painted at the time and the firearm could have belonged to one of the painters. *Id.*

"[A] petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Policano v. Herbert*, 507 F.3d 111, 116 (2d Cir. 2007) (citing *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000)). A "state criminal conviction will be upheld if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Thus, even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994).

Here, it is clear that, viewing the evidence offered at trial in the light most favorable to the prosecution, a rational jury could have found proof of petitioner's guilt beyond a reasonable doubt as to each element – including the constructive possession element – of the crime at issue. *See, e.g., Edwards v. Mazzuca*, No. 00 CIV 2290 RJS KNF, 2007 WL 2994449, at *3–4 (S.D.N.Y. Oct. 15, 2007). Specifically, the prosecution presented at trial the testimony of Keith Nelson, who testified that he did not have a handgun with him that day, and was up on a ladder painting the house at 204 Johnson Street when he saw Barksdale – who he had seen in the neighborhood, but did not actually know – wander onto the porch beneath him, disappear for a few seconds, and then re-emerge. The

prosecution also presented the testimony of Investigator Donovan, who watched Barksdale emerge from the park across the street from 204 Johnson Street, walk onto the porch of 204 Johnson Street, lay flat on his belly on the porch and stretch out his arms, and then immediately sit up on the step as if he belonged there. Investigator Donovan also testified that minutes later he found a handgun beneath a tarp on the porch near the area where Barksdale had stretched out. Lastly, Officer Sullivan testified that Barksdale attempted to flee and struggled with officers on the scene when he saw Investigator Donovan moving toward the porch that Barksdale had stretched out upon.

With respect to Barksdale's "weight of the evidence" argument, the Court notes that such claims are purely matters of state law, and not cognizable on federal habeas review. *Urruita v. Greene*, No. 05-CV-6153 CJS, 2007 WL 2484305, at *2 (W.D.N.Y. Aug. 28, 2007) (citing N.Y.C.P.L. § 470.15(5), which permits state appellate courts in New York to reverse or modify a conviction where they determine "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."). As such, "[f]ederal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding." *Id.* (collecting cases).

The Court therefore finds that Barksdale's legal sufficiency and weight of the evidence arguments are without merit.

<u>Unduly Harsh Sentence</u>

Lastly, Barksdale argues that his sentence was unduly harsh and excessive because "the minimum term of incarceration would have adequately served the goals of deterrence, rehabilitation and protection of society." Pet. at 18. "It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law." *Williams v. Lavalley*, 12–CV–01141, 2014 WL 1572890, at *5 (N.D.N.Y. Apr. 17, 2014) (citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)).

Here, Barksdale was convicted of criminal possession of a weapon in the second degree, a class C felony. Moreover, Barksdale conceded that he was a second violent felony offender. Sent. Hr'g Tr., Aug. 29, 2013, 3:10–16. As a second violent felony offender, the minimum sentence for Barksdale's conviction was seven years imprisonment, and the maximum was fifteen years imprisonment. N.Y. Penal Law § 70.04. Accordingly, Barksdale's challenge to his sentence does not present a cognizable federal question and must be dismissed. *See Congelosi v. Miller*, 611 F. Supp.2d 274, 316 (W.D.N.Y. 2009).

## CONCLUSION

Based on the foregoing, it is hereby ORDERED that Barksdale' application for habeas relief [ECF No. 1] is denied. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Barksdale has not made a substantial showing of the denial of a constitutional right. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is hereby ordered to close this case.

SO ORDERED.

Dated:      July 13, 2021
                Rochester, New York

ENTER:

*Charles J. Siragusa*
HON. CHARLES J. SIRAGUSA
United States District Judge